**Kenneth ZUREK, Plaintiff,**

v.

**Michael HASTEN, et al., Defendants.**

**No. 80 C 3365.**

United States District Court,
N.D. Illinois, E.D.

Oct. 28, 1982.

Kenneth P. Zurek, pro se.

Tyrone C. Fahner, Atty. Gen. of Illinois, Roger P. Flahaven, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Kenneth Zurek ("Zurek")[1] sues a number of State of Illinois officials and employees, charging an array of torts and civil rights violations related to his discharge as an Illinois Commerce Commission ("ICC") accountant. Defendants challenge all counts of Zurek's current complaint as failing to state causes of action.[2]

This opinion deals only with Complaint Count I, brought under 42 U.S.C. § 1983 ("Section 1983") for claimed due-process-violative infringements of Zurek's alleged property interest in continued public employment. Because no such property interest existed as a matter of law, defendants' motion to dismiss Count I is granted.

Zurek asserts two procedural violations in the course of his firing:

1. He was not afforded a pre-termination written notice and opportunity to be heard.

2. His termination was not approved by a majority of ICC Commissioners, so that Zurek could not obtain administrative reconsideration or judicial review of his discharge.

Even if those failures represented an absence of due process,[3] both the language of the Fourteenth Amendment and case law under it make plain that a deprivation of *property* must be involved to be actionable. Zurek founders on that threshold requirement.

As Zurek correctly recognizes, a "property" interest in public employment for Fourteenth Amendment purposes requires a legitimate claim of entitlement. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). State law controls on that score, for it creates and defines property interests. *Id.; Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Analysis of the Illinois law governing Zurek's former ICC employment negates any "property" right in that status.

Zurek points to two state statutes in claiming the entitlement that is a sine qua non to federal suit:

1. Illinois Personnel Code ("Code") § 8b.16[4] permits the discharge of state employees subject to jurisdiction B[5] of the Department of Personnel (the "Department") and its Civil Service Commission (a) "only for cause" and (b) after notice and prior hearing.[6]

2. Illinois Public Utilities Act (the "Act") § 3, Ill.Rev.Stat. ch. 111⅔, § 3, authorizes ICC to hire accountants "sub-

---

**1.** Zurek, who sues in connection with his prior state employment as an accountant, has just graduated from Loyola Law School (Complaint ¶ 13). At Zurek's request this Court has previously (but unsuccessfully) sought to obtain counsel willing to act pro bono as Zurek's lawyer. Under the circumstances no further efforts will be expended in that direction, and Zurek will be expected to continue to act pro se.

**2.** Zurek's most recent effort is his third try at presenting legally cognizable claims. This opinion will refer to that effort, as newly supplemented by a five-paragraph addition to Count I, as the "Complaint."

**3.** Zurek's second contention, made for the first time in his responsive memorandum rather than in the Complaint itself, is patently without merit. It need not be dealt with in substantive terms, however, for Zurek fails earlier in the day for the reason stated in the text.

**4.** Ill.Rev.Stat. ch. 127, §§ 63b101 to 119 establish Illinois' civil service provisions. For convenience in citation the "63b" will be omitted, as well as the hundreds digit of the remaining statutory citation, so that Section 63b108b.16 becomes simply "Code § 8b.16").

**5.** Three separate jurisdictional areas of the Department are defined in Code § 4a:

1. Jurisdiction A concerns "the classification and compensation of positions in State service."

2. Jurisdiction B concerns "positions in the State service to which persons must hold appointments on the basis of merit and fitness."

3. Jurisdiction C concerns "conditions of employment in State service."

**6.** Notice and hearing procedures do not of themselves implicate a "property" interest. It is rather the "for cause" constraint that gives rise to a constitutionally protected expectation of continued employment.

ject to the provisions of the 'Personnel Code.' " [7]

Defendants counter that Department Rule XIV "exempts" accountants like Zurek from jurisdiction B (Rule XIV in fact "extends" only jurisdiction A and C [not jurisdiction B] to "Public Utility Accountants and Public Utility Engineers in the Public Utility Division of the Illinois Commerce Commission"). In turn Zurek rejoins that:

1. He was not a "Public Utility Accountant."

2. If he were so classified, Rule XIV would run afoul of the Code and must therefore be disregarded.

■ Zurek's arguments mistake the basic statutory structure of the Code. It begins with a general proposition (Code § 4, emphasis added):

All offices and positions of employment in the service of the State of Illinois shall be subject to the provisions of this Act *unless specifically exempted in this Act.*

And it then goes on to create just such a relevant exception by specifically exempting from jurisdictions A, B and C the "*technical* and engineering staffs . . . of the Illinois Commerce Commission*" (Code § 4c(12), emphasis added).[8]

That statutory exemption clearly covered Zurek and thus defeats his current action under Count I. Complaint Count IV discloses that Zurek's role as ICC Accountant IV (his personnel classification, Complaint Count I ¶ 23) involved his analysis of utilities' requests for rate increases (Count IV ¶¶ 4–5), his preparation of findings and conclusions as to such increases (*id.* ¶ 8) and his testimony on those findings and conclusions at the ICC rate hearings (*id.* ¶ 9). Zurek's argument that he was an accountant but not a "Public Utility Accountant" borders on the absurd and avails him nothing in any event [9]—and on the actually decisive issue whether he was part of ICC's "technical" staff, a "yes" answer is compelled both by the plain meaning of that term in relation to his duties and by the administrative construction of the term reflected by the Department's very adoption of Rule XIV.

It must be concluded that Zurek, whose discharge was not subject to the "for cause" limitation of jurisdiction B (via Code § 8b.16), had no "property" interest in continued ICC employment in the constitutional sense. That being the case, his discharge without following any procedural steps (assumed for purposes of this motion) does not implicate the Due Process Clause.[10]

**7.** All the Act does is to incorporate the Code by reference. Accordingly the text analysis need examine only the Code and its Rules.

**8.** Code § 4b authorizes the Department to "extend" one or more of its forms of jurisdiction to personnel not initially covered by the Code. As already stated, Rule XIV exercised that power by extending jurisdictions A and C to "Public Utility Accountants and Public Utility Engineers in the Public Utility Division of [ICC]." That Rule has double significance:

1. It does *not* extend jurisdiction B, the critical provision for Zurek's purposes, to such employees.

2. It definitely classifies "Public Utility Accountants" as members of ICC's "technical staff."

Were the latter not the case, there would have been no occasion to *extend* partial jurisdiction to such accountants (for *all three* jurisdictions would have applied to them under Code § 4). Moreover the Rule's "Accountants and . . . Engineers" coverage is obviously an intended parallel to the Code § 4c(12) exemption of the "technical and engineering staff[ ] . . . of the Illinois Commerce Commission. . . ." "Ac-

countants" are thus "technical staff" by definition.

**9.** As n. 8 reflects, "Public Utility Accountants" are not entitled to jurisdiction B coverage (the only relevant protection) anyway. Thus if Zurek fit that description (in accordance with the common-sense reading of the term) he had no property interest in employment; and even if he did not, but was still a member of ICC's "technical . . . staff," Code § 4c(12) would compel the same conclusion.

**10.** Defendants suggest an alternative route to the same conclusion. Ignoring the clear impact of Code § 4c(12), and thus assuming Zurek's accounting position was initially subject to jurisdiction B because of the blanket coverage of Code § 4, they argue the Department revoked jurisdiction B's tenure safeguards by promulgating Rule XIV. That, they say, was an exercise of power under Code § 4d(3):

The Civil Service Commission, upon written recommendation of the Director of Personnel, shall exempt from jurisdiction B other positions which, in the judgment of the Com-

### Conclusion

Defendants' motion to dismiss Complaint Count I under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action is granted.

mission, involve either principal administrative responsibility for the determination of policy or principal administrative responsibility for the way in which policies are carried out. . . .
That line of reasoning does not track Rule XIV, which speaks of *extending* to jurisdictions A and C rather than *exempting* from jurisdiction B. This opinion's analysis is thus consistent with the language and structure of Rule XIV, as defendants' is not. And for current purposes defendants' argument would fall short. Complaint Count I ¶ 24 alleges Zurek's duties did not involve such principal administrative responsibilities. Inferences favorable to Zurek (appropriate on a motion to dismiss) would raise a factual issue as to the "judgment of the Commission" on the same subject.